UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>MICHAEL SZTROM, DAVID SZTROM, and SZTROM WEALTH MANAGEMENT, INC.,<br><br>                    Defendants. | Case No.: 3:21-cv-00086-H-RBB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>[Doc. No. 9.] |

On January 15, 2021, Plaintiff Securities and Exchange Commission ("SEC") filed a complaint against Defendants Michael Sztrom, David Sztrom, and Sztrom Wealth Management, Inc. ("Defendants"). (Doc. No. 1, Compl.) On March 30, 2021, Defendants filed a motion to dismiss the SEC's complaint. (Doc. No. 9.) On May 3, 2021, the SEC filed its opposition. (Doc. No. 10.) On May 10, 2021, Defendants filed their reply. (Doc. No. 11.) On May 11, 2021, the Court took the matter under submission. (Doc. No. 12.) For the reasons that follow, the Court denies Defendants' motion to dismiss.

**Background**

On January 15, 2021, the SEC filed a complaint against Defendants for: (1) fraud by an investment adviser in violation of section 206(1) of the Investment Advisers Act of 1940 ("Advisers Act"), (Compl. ¶¶ 169–75), (2) fraud by an investment adviser in violation of section 206(2) of the Advisers Act, (id. ¶¶ 176–82), and (3) against Defendant David Sztrom, aiding and abetting APA's violation of section 204 of the Advisers Act and Rule 204-2 thereunder, (id. ¶¶ 183–86). By the present motion, Defendants move to dismiss the complaint pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 9.)

The SEC's complaint alleges that Defendant Michael Sztrom has worked as an investment adviser and/or broker for over fifteen years for various securities firms. (Compl. ¶¶ 2, 12.) In August 2015, he allegedly resigned from his role as an investment adviser for a large securities firm in order to form his own investment advisory business. (Id.) Upon his resignation, he allegedly learned he was the subject of an investigation by the Financial Industry Regulatory Authority ("FINRA"). (Id. ¶¶ 2, 23–24.) After moving most of his advisory clients from his former employer to Charles Schwab & Co. ("Schwab"), Schwab informed Michael that it was prohibiting him from using its brokerage platform due to the ongoing FINRA investigation. (Id. ¶¶ 25–26.) Other broker-dealers allegedly also informed Michael he could not use their platforms, meaning he would no longer be able to execute trades for his clients. (Id. ¶¶ 2, 26–27.) At this point, Michael allegedly reached out to Mr. Paul C. Spitzer, the founder and CEO of Advanced Practice Advisors, LLC ("APA"), to inquire about joining APA. (Id. ¶¶ 28–29.) Mr. Spitzer allegedly inquired with Schwab about allowing Michael access to its platform if Michael became associated with APA; Schwab rejected the proposal. (Id. ¶¶ 29–30.) The SEC alleges that due to the ongoing investigation of Michael and his inability to access Schwab's brokerage platform, Mr. Spitzer decided to not associate with Michael, and to instead allow Michael's son, Defendant David Sztrom, to serve as an investment adviser representative ("IAR") with APA. (Id. ¶¶ 2, 31–32.) David had just passed his securities licensing exam and had limited

prior advisory experience. (Id. ¶¶ 3, 31–32.) Michael allegedly told Mr. Spitzer that he would serve in a limited role as a financial planner for clients. (Id. ¶¶ 33–34.)

The complaint alleges that upon David's association with APA in November 2015, the advisory clients that followed Michael from prior firms and any new clients while David was associated with APA (collectively, the "Sztrom clients") allegedly all signed an agreement to engage Sztrom Wealth Management, Inc. ("SWM") as their investment adviser representative with APA. (Id. ¶¶ 32, 35.) SWM was incorporated by David in August 2015 and was solely owned by him until March 2018 when Michael became a co-owner. (Id. ¶ 14.) The SEC alleges that Michael and David both controlled SWM throughout the relevant time period, and that both Michael and David were paid by SWM. (Id. ¶¶ 14, 39–41.) The SEC alleges that from when David became associated with APA in November 2015 to when he left APA in March 2018, Defendants deceived the Sztrom clients in breach of their fiduciary duties by having Michael continue to act as the clients' investment adviser despite not being an IAR associated with APA and being prohibited from using Schwab's brokerage platform. (Id. ¶¶ 5–8, 44–67.) The SEC alleges Michael communicated with Sztrom clients about investment advice, researched investments using David's access to Schwab's platform, made portfolio recommendations to clients, conducted trades for clients, and accessed client information and portfolios. (Id. ¶¶ 45–67.) Defendants allegedly created the impression that Michael was associated with APA by sharing office space and telephone lines, describing both Michael and David on SWM's website, and referring to Michael's 35 years of investment advising experience on SWM's website. (Id. ¶¶ 68–84.) The SEC alleges many Sztrom clients believed Michael was their IAR with APA and authorized to make trades on their behalf, and that Defendants failed to correct the Sztrom clients' confusion as to Michael's lack of association with APA out of concern that David's inexperience would cause clients to leave. (Id.) As a result of Defendants' alleged deception, the Sztrom clients were allegedly unaware that the investment advice Michael provided to them was not subject to any oversight or supervision by APA or other investment advisory entities. (Id. ¶¶ 95–101.)

The SEC also alleges that Michael impersonated David and purported to be associated with APA on approximately 38 telephone calls with Schwab between November 2015 and May 2016. (Id. ¶¶ 102–14.) When Schwab learned of the alleged impersonation, it terminated its relationship with APA and gave APA ninety days to find a new broker. (Id. ¶ 113.) On June 2, 2016, Schwab sent a letter to all APA clients using the Schwab platform informing them that it was terminating its relationship with APA "due in part to failure to adhere to Schwab's process standards." (Id. ¶¶ 118–19.) The SEC alleges that when the Sztrom clients asked Defendants about the change in platforms, Defendants misrepresented the reason for Schwab's termination, for example, by telling one client Michael had only impersonated David on a single call with Schwab. (Id. ¶¶ 115–29.)

## Discussion

### I.   Legal Standards

#### A.   Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008); see Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 245 (9th

Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted."). "The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" Starr v. Baca, 652 F.3d 1202, 1216–17 (9th Cir. 2011) (citing Iqbal, 556 U.S. at 681). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

### B. Investment Advisers Act of 1940

The Advisers Act contains general antifraud provisions prohibiting fraud in the offer and giving of investment advice. In relevant part, section 206 of the Advisers Act provides:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client

15 U.S.C. § 80b-6. Section 206 imposes a fiduciary duty upon investment advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts to their clients, and to employ reasonable care to avoid misleading clients. S.E.C. v. Cap. Gains Rsch. Bureau, Inc., 375 U.S. 180, 194 (1963); see Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 17 (1979); S.E.C. v. Gendreau & Assocs., Inc., No. CV 09–3697–JST (FMOx), 2010 WL 11508794, at *5 (C.D. Cal. Dec. 7, 2010).

///
///
///
///
///
///

## II.  Analysis

Defendants contend that the SEC's complaint fails to plead its fraud-based claims with particularity, fails to satisfy the scienter standard, fails to plead facts indicating materiality, and fails to state an actionable aiding and abetting claim. (Doc. No. 9.) The Court addresses each argument in turn.

### A.  Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). "In a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995). This requirement is satisfied by allegations of the "time, place and nature of the alleged fraudulent activities." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). When a fraudulent statement is alleged, a "plaintiff must set forth what is false and misleading about the statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), superseded by statute on other grounds.

Defendants argue that the SEC fails to plead its section 206(1) and (2) claims, which undisputedly sound in fraud, with sufficient particularity to satisfy Rule 9(b). (Doc. No. 9-1 at 11–13.) Defendants argue the SEC does not identify which clients were communicated with or provide detail on which misrepresentations were made. (Id. at 12.) They contend that the SEC must specifically identify any trades that Michael executed, on what dates, and for which clients in order to satisfy Rule 9(b). (Id.) The Court disagrees. As the SEC notes in its opposition, Rule 9(b) does not require the SEC to identify all involved

individuals or the exact details of every alleged transaction; rather, the SEC meets its pleading burden by providing details that are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns, 567 F.3d at 1124 (quoting Bly–Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)); see, e.g., S.E.C. v. Drake, No. 2:17-CV-06204 CAS(GJS)X, 2017 WL 6507766, at *5 (C.D. Cal. Dec. 18, 2017) (denying motion to dismiss under Rule 9(b), noting that the "complaint provides ample details that allow [defendant] to discern who the unnamed individuals are"); see also In re Dauo Systems, Inc., 411 F.3d 1006, 1015 (9th Cir. 2005). This is especially the case when, as here, the omitted facts regarding the Sztrom client communications and transactions are in the possession of Defendants. See S.E.C. v. Kara, No. C 09-01880 MHP, 2009 WL 3400662, at *3 (N.D. Cal. Oct. 20, 2009) ("Rule 9(b) does not require plaintiffs in a securities fraud case to allege facts that are in the sole possession of the defendants.") (citing Deutsch v. Flannery, 823 F.2d 1361, 1366 (9th Cir. 1987)).

The SEC has pled sufficient detailed allegations of the Defendants' alleged fraudulent scheme to mislead and deceive the Sztrom clients by concealing that Michael was not associated with APA or another registered investment adviser as an IAR,[1] that he

---

[1] Defendants challenge the SEC's allegation that APA told Michael he was not entitled to associate with APA as an IAR during the relevant time and contend that Michael was never legally prohibited from associating with APA. (Doc. Nos. 9-1 at 2 n.3; 11 at 1–2.) Defendants' challenges to the SEC's factual allegations are better suited to a motion for summary judgment when the record is more fully developed. See Cook, Perkiss & Liehe, Inc., 911 F.2d at 245. Furthermore, the Court notes that whether or not Michael Sztrom was legally ineligible to be a registered IAR with APA during the relevant time period is not dispositive; rather, the relevant issue is whether he was not associated with APA as an IAR but still conducted himself and held himself out to the Sztrom clients as such.

was banned using from the Schwab platform,[2] that his investment advice and trades were unsupervised by APA, that he impersonated David on calls to Schwab,[3] and that Schwab kicked the Sztrom clients off of their platform because of Defendants' impersonation and deception. (Compl. ¶¶ 44–52, 68–84, 95–110, 113–17.) The SEC explains how the alleged failure to disclose this information to the Sztrom clients misled and deceived them. (Id. ¶¶ 84, 100–01, 129, 140–43.) The complaint provides several specific examples of Defendants' alleged emails and text messages to the Sztrom clients in which Defendants made misrepresentations and omissions, including examples with the exact language of the communication, which would allow Defendants to discern who the unnamed clients are. (Id. ¶¶ 52–66, 121–27.) Additionally, the Court disagrees with Defendants' assertion that the complaint does not contain any specific allegations demonstrating that Michael actually performed trades for the Sztrom clients during the relevant period. (Doc. No. 9-1 at 7 n.9, 8.) The complaint contains several factual allegations indicating that Michael performed trades for the Sztrom clients when he was not associated with APA as an IAR and was banned from Schwab's platform, without informing the Sztrom clients of either fact. (See Compl. ¶¶ 56–66; ¶ 110 (In April 2016, "Michael contacted Schwab, identified himself as David, and informed the Schwab representatives that he was trying to place some long trades in a Sztrom client account").) These allegations are sufficient to give Defendants

---

[2]  Defendants challenge the SEC's allegation that Michael Sztrom was "banned" from working with broker-dealers during the relevant time period. (Doc. No. 9-1 at 1 (citing Compl. ¶¶ 3, 5).) They request that the Court take judicial notice of Michael Sztrom's FINRA report as evidence that he was not banned by any regulatory or judicial authority. (Id. at 1 n.1, Ex. 1.) The Court grants the request but notes that the SEC has not alleged that Michael was the subject of a regulatory bar or ban. Rather, the SEC alleges that Schwab informed Michael that it was prohibiting him from using its brokerage platform due to the ongoing FINRA investigation, and that Michael nevertheless continued to use the platform through David's access. (Compl. ¶ 26.)

[3]  Defendants also request that the Court take judicial notice of examples of prior fines and suspensions imposed in FINRA settlements involving impersonation. (Doc. No. 9-1 at 7 n.8, Ex. 2, Ex. 3.) The Court grants the request, but they do not change the Court's determination on the motion to dismiss; as the SEC notes, determinations regarding unrelated third parties by FINRA, a private self-regulatory organization, are not relevant to SEC enforcement actions like the current matter. (Doc. No. 10 at 2 n.1.)

notice of the particular misconduct alleged so that they may prepare an answer and defend against the charges. See Kearns, 567 F.3d at 1124.

Defendants also argue that the complaint lacks specific allegations regarding David's role in the alleged fraud. (Doc. No. 9-1 at 11–13.) They contend the SEC's allegations only show that David was aware of and occasionally present for his father's alleged actions, which they argue is insufficient for Rule 9(b). (Id.) The SEC responds that the complaint alleges that David had an active and integral role in the alleged fraudulent scheme, for example, by sharing his office space, telephone line, client information, APA master account number, and APA research materials with Michael, (Compl. ¶¶ 47, 51, 68), giving Michael access to both the APA system and the Schwab platform to conduct trades on the Sztrom clients' behalf, (id. ¶¶ 47–51), facilitating Michael's unauthorized communications with the Sztrom clients, (id. ¶¶ 67, 95–97), and helping to create the impression that Michael was the IAR for the Sztrom clients, even though David was the actual IAR for those clients, (id. ¶¶ 68–84). The SEC's allegations regarding David's involvement in the alleged fraudulent scheme are sufficient to meet Rule 9(b). In sum, the SEC has met its burden to plead its section 206(1) and 206(2) claims with sufficient particularity to satisfy Rule 9(b). See Fecht, 70 F.3d at 1082. Accordingly, the Court denies Defendants' motion to dismiss the SEC's complaint for failure to satisfy Rule 9(b).

### B. Elements of Section 206 Claims

Defendants contend the SEC has failed to plead the scienter element of its section 206(1) claim, and the materiality element of both the section 206(1) and 206(2) claims. (Doc. No. 9-1 at 13–15.) The Court addresses each element in turn.

#### 1. Scienter

"Courts have found that violations of Section 206(1) require a proof of scienter, while violations of Section 206(2) require only a proof of negligence." S.E.C. v. Smith, No. CV 20-1056 PA (SHKX), 2020 WL 6115077, at *4 (C.D. Cal. June 3, 2020); see S.E.C. v. Steadman, 967 F.2d 636, 641–42 (D.C. Cir. 1992) (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)). "Scienter is 'a mental state embracing intent

to deceive, manipulate, or defraud.'" S.E.C. v. Rubera, 350 F.3d 1084, 1094 (9th Cir. 2003) (quoting Hochfelder, 425 U.S. at 193 n.12). A violation of section 206(1) also may be supported by "knowing or reckless conduct," without a showing of "willful intent to defraud." Vernazza v. S.E.C., 327 F.3d 851, 860 (9th Cir.), amended, 335 F.3d 1096 (9th Cir. 2003). "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007); see In re GlenFed, Inc., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter generally, just as the rule states – that is, simply by saying that scienter existed.").[4]

      The SEC alleges that Michael Sztrom knowingly or recklessly: (1) concealed from the Sztrom clients that he was not associated with APA as an IAR and thus, among other things, was not allowed to use APA's systems or execute trades on their behalf; (2) used David's Schwab account to access Schwab's platform and impersonated David on phone calls with Schwab regarding client information; and (3) provided false information to and omitted material information from the Sztrom clients regarding the real reason for APA's departure from the Schwab platform. (Compl. ¶¶ 131–32.) It alleges David Sztrom and SWM (through the actions of Michael and David) knowingly or recklessly: (1) permitted Michael to use David's access to the Schwab platform, access Sztrom client information,

---

[4] The SEC correctly notes that Defendants have relied upon inapposite caselaw in order to support their assertion that the SEC must satisfy a "stringent pleading standard" for scienter. (Doc. No. 9-1 at 13.) The Private Securities Litigation Reform Act of 1995 ("PSLRA") altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter. Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001). But the Ninth Circuit has confirmed that the PSLRA, which does not apply to the SEC, did not alter the pleading standard for SEC enforcement actions, and thus the SEC need only satisfy the original Rule 9(b) pleading standard for scienter. See S.E.C. v. Small Cap Research Group, Inc., 226 F. App'x 656, 657 (9th Cir. 2007) (noting that because the "[PSLRA] does not apply [to SEC actions], the allegations must only pass muster under Fed. R. Civ. P. 9(b) . . . Scienter may be, and has been, averred generally."); S.E.C. v. Berry, 580 F. Supp. 2d 911, 920 (N.D. Cal. 2008) (noting that heightened pleading standard for scienter under the PSLRA does not apply to actions brought by the SEC). Defendants also incorrectly assert that the Court must consider "plausible, nonculpable explanations" for their conduct. (Doc. Nos. 9-1 at 13; 11 at 7 (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)).) Tellabs, Inc. involved a securities action brought by a private party, which is subject to the requirements of the PSLRA, unlike the present case.

and impersonate David in communications with Schwab; and (2) concealed from the Sztrom clients that Michael was not associated with APA as an IAR but was nonetheless accessing their client information and executing trades on their behalf. (Id. ¶¶ 133–35.) The SEC alleges Michael and David Sztrom have admitted under oath that they knew it was wrong for Michael to impersonate David on telephone calls with Schwab. (Id. ¶¶ 111, 134.) The SEC alleges Michael and David knew the Sztrom clients were confused about who their IAR was and yet did not take any opportunity to correct their clients' confusion, and in fact undertook actions to maintain the misconception, such as by referencing Michael's thirty-five years of experience on the SWM website and forming the non-operational Sztrom Capital Management. (Id. ¶¶ 68–94.) These allegations are sufficient to plead that Defendants acted with scienter throughout the relevant period. See Fernandez v. U.S., 329 F.2d 899, 908 (9th Cir. 1964) ("If the fact that Fernandez made telephone calls to the bank officer and prospective purchaser, impersonating others, was independently proved, an improper intent was likewise independently proved, because the nature of the act involved such an intent."); In re Galena Biopharma, Inc. Sec. Litig., 117 F. Supp. 3d 1145, 1166 (D. Or. 2015) (noting that defendant's alleged attempts to hide and cover up the specifics of the alleged fraudulent scheme supported an inference of scienter); Nathanson v. Polycom, Inc., 87 F. Supp. 3d 966, 979–80 (N.D. Cal. 2015) (noting that the defendant's attempts to hide his fraudulent conduct was evidence of scienter). In sum, the Court denies Defendants' motion to dismiss the SEC's section 206(1) claim for failure to plead scienter.

### 2. Materiality

"For purposes of securities fraud, materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information. . . . A statement is material if a reasonable investor would have considered it useful or significant." U.S. v. Jenkins, 633 F.3d 788, 802 (9th Cir. 2011). "For a misrepresentation to be material, 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" S.E.C. v. Todd, 642 F.3d 1207, 1215 (9th Cir.

2011) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988)). "Materiality . . . [is a] fact-specific issue[] which should ordinarily be left to the trier of fact." S.E.C. v. Retail Pro, Inc., 673 F. Supp. 2d 1108, 1132 (S.D. Cal. 2009) (quoting In re Apple Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir. 1989)); see Siracusano v. Matrixx Initiatives, Inc., 585 F.3d 1167, 1178 (9th Cir. 2009).

The SEC has sufficiently pled that the alleged misrepresentations and omissions made by the Defendants would have been useful or significant to a reasonable investor. It is plausible that a reasonable investor would have considered it important to know that the individual giving them investment advice and making trades on their behalf was not associated with any registered investment adviser as an IAR; used another individual's accounts, passwords, and platform access; was prohibited from accessing the brokerage platform containing their investment portfolio; conducted trades and provided investment advisory services without supervision or compliance oversight; and repeatedly impersonated another individual in communications with a broker-dealer, to the point where the broker-dealer terminated the relationship. (Compl. ¶¶ 140–43.)

Defendants make several arguments for why their conduct was not material. They argue that the complaint does not contain any allegations that any Sztrom clients or customers were harmed, damaged, or suffered any financial loss as a result of Defendants' conduct. (Doc. Nos. 9-1 at 2, 5; 11 at 2.) But "[t]he SEC need not prove injury in an action to enjoin violation of § 206 of the Investment Advisers Act." S.E.C. v. Rana Rsch., Inc., 8 F.3d 1358, 1363 (9th Cir. 1993) (citing Cap. Gains Rsch. Bureau, Inc., 375 U.S. at 195). Defendants note that many of the Sztrom clients stayed with them despite Schwab's letter notifying them of the change in platforms, and argue this fact demonstrates that the alleged misrepresentations and omissions cannot have been material to the clients. (Doc. No. 9-1 at 14–15.) But the "reasonable investor" test is an objective standard, and thus the reactions of the actual Sztrom clients are not dispositive; furthermore, the SEC alleges that at least four of the Sztrom clients and several other APA clients did terminate their relationship following Schwab's letter. (Compl. ¶ 128.) Finally, Defendants challenge the SEC's

allegation that they failed to fully inform or provide notice to the Sztrom clients about the termination of APA's relationship with Schwab; they argue Schwab terminated the relationship and contemporaneously notified the Sztrom clients in June 2016, meaning there could not have been a fraudulent omission. (Doc. No. 9-1 at 15 (citing Compl. ¶¶ 117–19).) But the SEC alleges that the Schwab letter did not inform the Sztrom clients of the specific reason for the termination, i.e., Michael's repeated impersonation of David and access of the platform. (Compl. ¶ 119.) When the Sztrom clients asked Defendants about the change in platforms, Defendants allegedly provided false and misleading explanations, for example, that the new broker had "more advanced portfolio management capabilities" or that Michael had only impersonated David on a single call. (Id. ¶¶ 121–27.) In sum, the Court denies Defendants' motion to dismiss the SEC's sections 206(1) and 206(2) claims for failure to plead materiality.

### C. Aiding and Abetting

Finally, Defendants challenge the SEC's third cause of action of aiding and abetting APA's violations of section 204 of the Advisers Act against David Sztrom. (Doc. No. 9-1 at 16–18.)[5] To establish Defendants' liability under an aiding and abetting theory, the SEC must establish: (1) a primary or independent securities violation committed by another party; (2) knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) substantial assistance by the defendant in the commission of the primary violation. Ponce v. S.E.C., 345 F.3d 722, 737 (9th Cir. 2003); see S.E.C. v. Fehn, 97 F.3d 1276, 1288 (9th Cir. 1996).

---

[5] Defendants claim that Rule 9(b) applies to the SEC's third cause of action because the complaint inadvertently included "fraud" in the title of the aiding and abetting violations of section 204 claim against David Sztrom. (Doc. No. 9-1 at 16.) This typographical error does not mean the Court will apply Rule 9(b) to the SEC's third cause of action; a section 204 violation, which Defendants acknowledge, (see id. at 17), is a books and records claim that does not sound in fraud and therefore is not subject to Rule 9(b). The Court also notes that even if Rule 9(b) did apply to the SEC's third cause of action, the Court would still conclude the SEC had met its pleading burden.

Section 204 of the Advisers Acts imposes recordkeeping and reporting requirements on registered investment advisers. Under section 204(a) and Rule 204-2 thereunder, registered investment advisers are required to retain:

> Originals of all written communications received and copies of all written communications sent by such investment adviser relating to:
>
> > (i) Any recommendation made or proposed to be made and any advice given or proposed to be given;
> >
> > (ii) Any receipt, disbursement or delivery of funds or securities; and
> >
> > (iii) The placing or execution of any order to purchase or sell any security.

17 C.F.R. § 275.204-2(a)(7). The SEC alleges that APA was an SEC-registered investment adviser during the relevant time period. (Compl. ¶ 148.) The SEC alleges that APA violated section 204 and Rule 204-2 because David communicated with APA clients about investment matters outside of the APA email system – and knew about Michael's similar communications with clients – meaning that those original client communications were not retained by APA. (Id. ¶ 156.) The SEC provides several examples of text messages regarding the pricing of securities and trades allegedly sent by David and Michael to Sztrom clients outside of the APA communication system. (Id. ¶¶ 56–67, 156–62.) The Court concludes these allegations are sufficient to plead a primary violation by APA. Defendants' arguments regarding the "unproven" nature of the primary violation are better suited to a motion for summary judgment. See Cook, Perkiss & Liehe, 911 F.2d at 245.

The SEC has adequately alleged that David acted with knowledge of APA's violation of section 204. The SEC pleads numerous allegations demonstrating that David had knowledge of APA's electronic recordkeeping system and compliance manual, the prohibition on external client communications, and the requirement to preserve and retain client communications at the time when APA original client communications regarding investment advice were not being retained. (Compl. ¶¶ 150–57, 167–68, 185.) Finally, the SEC has sufficiently alleged that David provided substantial assistance in bringing about APA's section 204 violations. Defendants argue that the SEC's allegations only show David's "mere awareness and approval" of the primary violation. (Doc. No. 9-1 at 17–18.)

But the SEC has alleged that David's affirmative actions – choosing to communicate with the Sztrom clients outside of the APA system and allowing his father to do the same – in violation of APA's compliance system led directly to APA's inability to review or preserve the client communications for compliance purposes. (Compl. ¶¶ 156, 162–68, 184–85.) As such, the Court denies Defendants' motion to dismiss the SEC's aiding and abetting APA's violations of section 204 claim against Defendant David Sztrom. Defendants' arguments are better suited to a motion for summary judgment when the record is more fully developed.

## Conclusion

For the reasons stated, the Court denies Defendants' motion to dismiss in its entirety. The Court orders Defendants to file an answer to the complaint within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

DATED: May 11, 2021

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT